THE MAYOR, &c., OF THE CITY OF NEW YORK a.
CONOVER.

*New York Common Pleas; Special Term, August,* 1857.

CONTEMPT.—DISOBEDIENCE TO INJUNCTION.—RESTRAINT ON LEGAL
PROCEEDINGS.

Where an injunction against the further prosecution of a legal proceeding is served
  upon the promovent therein, it is his duty not only to refrain from taking any
  further active part in the proceeding enjoined, but also to direct the officers of
  court and others who act in the proceeding at his instance, and under his con-
  trol, to delay any further steps in the matter, pending the injunction.

If it appears that the party has stood by and allowed a process over which he
  had control to be executed after he has himself been served with an injunction
  restraining it, he is guilty of disobedience to the order, and may be punished as
  for a contempt.

To assume the custody of the room appropriated to a public office, and containing
  the books and papers relating thereto, after service of an injunction forbidding
  the party to interfere with those books and papers, is a violation of the injunc-
  tion, although the party does not touch the books and papers, or allow others
  to do so.

Where an injunction is granted by the *court,* and not by a judge out of court, it
  is properly served by delivering a certified copy; and no exhibition of the
  original order is requisite.

Order to show cause why the defendant should not be pun-
ished for contempt.

This was an action for an injunction. A reference was ordered
to take proof of the facts constituting the alleged contempt, and
the motion now came on for argument, upon the referee's report.
The facts of the case are stated in the opinion of the court. For
other proceedings in the course of the controversy of which this
motion forms a part, see Conover's case (*Ante,* 73, and *Ante,*
182); The Mayor, &c., of the city of New York a. Conover
(*Ante,* 171, and *Post,* 252); The People *on rel.* Devlin a. Pea-
body (*Ante,* 194).

*D. E. Sickles,* for the motion.—I. On a motion to punish for
contempt in disobeying an injunction, when the disobedience is
proven, no question is before the court except whether the court

had jurisdiction of such a suit and to issue injunctions (Sturtevant *v.* The People, 5 *Seld.*, 263, Williamson's case, *Phil. L. J*).

II. The attempt to deny timely service of the injunction is mere evasion, taking the facts which occurred according to any statement which the defendant has made of them or any construction which he has attempted to put upon them. 1. It is the every-day practice of courts in punishing disobedience to injunctions to set aside pretences of this kind. (See cases cited in Sturtevant *v.* The People, 5 *Seld.*, 263.) 2. The pretence of Conover is, that the injunction was served after his law agent Brewer and constable Farrington had left the court-room with the process. Assuming this to be true, Conover was promovent of the proceedings on which the search-warrant was issued; he had employed those two persons to do the acts inhibited by the injunction, and consequently on receiving the injunction he was bound at once to recall his instructions to them. Instead of so doing, he, by his counsel Mr. Field, steadily persisted in urging Judge Peabody to rapid and continued progress; he permitted his constable to bring one parcel of papers before the judge and to go again to the office and bring another parcel. In this matter the maxim *qui facit per alium facit per se* must be applied. The acts of Mr. Field are the acts of Mr. Conover, especially as they were done in his presence. 3. The proceedings before Judge Peabody were not in the exercise of any legitimate jurisdiction. All persons concerned in them are trespassers. Consequently the whole matter touching the search-warrant and its issue may properly be left out of view. It was part of the machinery employed to color the depredations upon the plaintiff's property, which the injunction was designed to prevent (Burt *v.* Place, 4 *Wend.*, 600). 4. The attempt to screen Conover from responsibility on the ground of want of concert between himself as receiver of the injunction and his various agents—agents acting on his retainer and in his presence—is a striking piece of effrontery.

III. The contemptuous language of Conover's senior counsel, and the contemptuous acts of his junior counsel, harmonize so perfectly, not merely in temper but in actual effect, indicating concert, that were there no proof of the fact that the injunction was known to Brewer before he left the room, the fact would be sufficiently established. But the proof is full, direct, and conclusive.

IV. On the undisputed facts which appeared before the referee, a contempt is clearly shown.

*David Dudley Field*, opposed.—I. There was no violation of the injunction by Mr. Conover's entering the street commissioner's apartments. The injunction prohibited only his removing the books and papers, or interfering with them. He did neither by entering the apartments or remaining there.

II. The injunction asked for by the complaint was to prohibit his executing the warrants as well as removing the papers. The former was refused; a clear intimation from the court that he might proceed with the execution and do any thing but remove the books and papers.

III. An injunction is now an order, and is to be served as other orders are required to be served. There can be no contempt, therefore, of an injunction, when there would not be a contempt of an order served in the same manner and under the same circumstances. (*Code*, §§ 218, 220 ; Coddington *v.* Wells, 4 *Sandf.*, 639 ; Watson *v.* Fuller, 9 *How. Pr. R.*, 426.)

IV. There can be no contempt till the party enjoined knows that he is enjoined, and what he is commanded not to do; nor can there be a contempt until having such knowledge he does some act which he was prohibited from doing.

V. The question, then, reduces itself to this : After due service of the injunction, and an opportunity to know its contents, did Mr. Conover remove or disturb the books and papers of the street commissioner's office ?

VI. Mr. Conover has never removed or touched a book or paper.

VII. He has never directed another to do so, unless the application for a warrant was such a direction. But the injunction is not directed against that. It is aimed only at the removal or use of the books and papers, after the execution of the warrant.

VIII. The direction of the warrant and its delivery to the officer were moreover the acts of the judge. It was his duty to "issue his warrant." The injunction in this case does not assume to prevent, nor could it prevent Mr. Justice Peabody from "issuing his warrant" to constable Farrington.

IX. After the issuing of the warrant to the constable, Mr.

Conover had no control over it. He could neither countermand it nor direct how it should be executed.

X. But suppose Mr. Conover to be, as he certainly is not, responsible for all that was done with the warrant or under it after it left the hands of the judge, then the inquiry becomes this : What was done with the warrant, or under it, after the due service of the injunction and an opportunity to know its contents? All that was done at any time before or after the service of the injunction was the constable's receiving the warrant, proceeding with it to the street commissioner's rooms, and bringing three armfuls of books before the judge. These acts were not forbidden and could not have been forbidden.

*James T. Brady*, in reply.

INGRAHAM, F. J.—The plaintiffs move for an attachment against the defendant Conover, for a contempt in disobeying an injunction issued out of this court.

The plaintiffs filed their complaint originally against Conover, Willet, and Devlin, and obtained an injunction against them, restraining the defendants Conover and Willet from removing or causing to be removed the books, maps, records, documents, and other papers in the complaint mentioned, from the places where they were, and from interfering with the same in any manner or way whatever ; and restraining Devlin from delivering the said property to Conover, or any person claiming the same for him. The complaint averred that the property referred to was the books, maps, records, documents, and other papers connected with the street commissioner's department, and are the exclusive property of the plaintiffs; that Devlin had been appointed street commissioner by the Mayor and Board of Aldermen, and had possession of such books and papers in the street commissioner's office. It also set out the claim of Conover to the office, and the contemplated seizure of the books and papers by means of the proceedings before Mr. Justice Peabody.

At the time of serving the injunction, the parties and their counsel were in attendance before that judge who was about to issue the warrant for the arrest of Devlin, and the search-warrant for the books and papers under the proceedings before him. These proceedings were founded on the petition of Conover, and

were conducted for the purpose of obtaining for him the possession of the books and papers. Immediately after the warrants were signed by the judge, the injunction was served upon the defendant Conover, with the copies of the papers on which it was obtained. At the same time the warrant was placed in the hands of one of the defendant's counsel, and then delivered to the constable, who proceeded forthwith to execute it. In so doing, a part of the books and papers were brought from the street commissioner's office and placed in the room of the Supreme Court. Conover immediately thereafter proceeded to the street commissioner's office, and, according to the testimony of Turner, with violence, but as stated in his own affidavit, without any violence, took possession of the rooms where the residue of the books and papers were, and has kept the possession and control of such rooms to the present time.

The plaintiffs contend that the defendant violated the injunction both in causing the portion of the books to be brought from the street commissioner's office, and also in taking possession and control of the office where the books were hid, excluding therefrom the deputy of Devlin, after Devlin had been arrested and taken to prison.

A serious difference has taken place between the witnesses as to the precise time when the injunction and other papers were served on the defendants. That difference does not at most extend to a period of more than two or three minutes, but was considered of importance as embracing that particular moment when Mr. Brewer, one of the counsel of Mr. Conover, took the warrant, and, leaving the court-room, delivered it to the constable Farrington for execution. The defendant's counsel insist that the injunction was not served until after Mr. Brewer left the court-room.

There are other matters, however, disclosed in the investigation which, from the view I entertain of the defendant's conduct, happily relieves me from the necessity of deciding this point. It is conceded that the injunction had been served on the sheriff some hours; that the defendant Conover knew for some days previous that an application had been made for an injunction and was disposed of; that the injunction was served upon Conover in court after the warrant was issued, and before the officer had brought the first parcel of books which he removed; that

no measures were taken by him after the service of the injunction to prevent the removal of the books, although it appears from the affidavit of Farrington, that after he took one armful of the books to the Supreme Court room, he returned and procured a second armful with which he again returned to the court. Whatever doubt might exist as to the time of serving the injunction on Conover, there can be no doubt but that it was served and understood before Farrington returned with the second load of books from the office. The obligation of obedience to the order was precisely the same, whether it had been served before or after Mr. Brewer had left the court-room with the warrant, when it was signed by Judge Peabody. In either event, it is conceded that it had been signed by the judge, and Mr. Conover could just as well have stopped the execution of it after the first load of books had been received, as he could if the injunction had been served before Messrs. Brewer and Farrington first left the court-room. That such was his duty I have no doubt. The proceeding was one instituted by himself for the delivery of the books to himself, and was subject to his control. The judge before whom it was pending would not have proceeded therein except on the application of his counsel, and the execution of the search-warrant could have been suspended by him as easily before the second load of books was brought, as afterwards. The fact shows that he had entire control over the execution of the warrant, because he did stay proceedings after the return of Farrington the second time from the street commissioner's office.

I think, therefore, the evidence shows a clear violation of the injunction after the admitted service on Conover, and that it therefore becomes unnecessary for me to pass upon the question as to the exact point of time at which such injunction was served.

There are facts also in this case which very strongly mark the conduct of the defendant, although they are connected with the conduct of the defendant's agents rather than himself. The fact of an injunction having been allowed, was known to the counsel for some days. The haste with which the warrant was placed in execution after it was signed, the speed used in obtaining the books, the remarks of the counsel in regard to the time in which the books would be brought to the court-

room, the remarks made in court relative to the injunction, the advice to the officer to disobey the order because he was not a party to the action, the change in the officer who was to execute the warrant—all show a predetermined course of action to execute the search-warrant in evasion of that injunction. Instead of taking measures to delay the execution of the process, as was his duty, both Mr. Conover and his counsel were evidently endeavoring to have the warrants executed, and they used for that purpose all the means in their power until after the officer returned a second time with books from the street commissioner's office. Such was not the course which would have been adopted by a party disposed to submit to the order of the court.

Nor was the conduct of Mr. Conover subsequently free from an interference with these books and papers. They were in the custody of Devlin, who had been appointed street commissioner by the Mayor and Board of Aldermen. Whether that appointment was rightfully made or not, is immaterial on this motion. When Devlin was arrested, Turner, his deputy, was rightfully in possession. Mr. Conover expelled Turner from the office, and consequently from the possession of the books and papers which his duty required him to guard. From that time the defendant kept the entire control of the office, and with it of the books and papers therein.

It is no answer to say he has not touched the books, or permitted others to do so. He has assumed the control of them by excluding from the care of them those to whom the constituted authorities committed them. I can see no difference between this interference with them and that of taking possession of the rooms in which they were, and shutting them up from everybody. Such an act in regard to the property of individuals would be a trespass, for which the owner could recover the full value of the property in damages; and if the law considers such an act to be an interference with another's property, so as to charge the aggressor with its full value, surely it is no harsh construction to say that it violates an order of the court which prohibited the defendant from any manner of interference with the books and papers of that office.

I have no hesitation in coming to the conclusion, that the defendant Conover has violated the order of injunction served upon

The Mayor, &c., of the City of New York *a.* Conover.

him, after its service, and that he should be adjudged guilty of contempt.

The defendant's counsel objects to these proceedings, that the order of injunction was not properly served.

The copy of the papers was served with the order, which was certified by the clerk. This is the proper and only mode in which an order made by a court could be served. The original order was a part of the records of the court, and no other service could be made than a copy certified by the clerk, as a copy of an original order made of the court. The Code (§ 218) provides that the order may be made either by the court or by a judge. The plaintiffs selected the former mode of proceeding, and their proceedings were regular.

Even if there was a technical error in serving the order, the case of The People *a.* Sturtevant (5 *Seld.*, 278) decides, " that with actual notice of the injunction, although there might have occurred some slip in the formal method of bringing it home to the defendant, the defendant had no right to disobey or evade it." The case referred to by the defendant's counsel (Watson *a.* Fuller, 9 *How. Pr. R.*, 425) was on a motion against persons not parties to the action, and is in no case applicable to this motion.

Of the propriety of obedience to the orders of a court there can be no doubt, and it is not for a party to decide whether such orders should or should not be obeyed; as long as the order remains in force it is his duty to comply with it, and when he assumes to act in disobedience of it, or evade its power by causing acts to be done by his agents which he is prohibited from doing directly, he is exposed in either case to punishment. And for this purpose it is equally immaterial whether the injunction was properly issued or not. So long as it remained in force, the defendant was bound to recognize it as the order of the court, which he was bound to respect and obey. Such is the language of the vice-chancellor in Moat *a.* Holbein (2 *Edw. Ch. R.*, 188). And in Sullivan *a.* Judah (4 *Paige*, 447), the chancellor says :— " Although a party is not to be permitted to violate an injunction with impunity, even if it had been erroneously issued, and without any sufficient cause to sustain it, yet the court may take that into consideration in determining the extent of punishments." And in The People *a.* Spaulding (2 *Paige*, 329), the

chancellor says:—" In no case can a defendant be permitted to disobey an injunction regularly issued, whatever may be the final decision of the court upon the merits of the cause." (See also 5 *Seld.*, 278.)

In the present case I shall take it for granted that the defendant, acting under the advice of his counsel, might have supposed that he was not actually violating the injunction served upon him; but I cannot adopt any other conclusion than that both he and his counsel were engaged in a deliberate attempt to evade obedience to that order after full knowledge of its contents, and that in so doing the defendant did actually violate and disobey it.

The effects of such disobedience can be remedied by the defendant; the books and papers removed by him or his agents can be returned to the offices, and all the books and papers can be restored to the custody from which they were taken, and by so doing the defendant can, to that extent, purge himself from the contempt, and render other punishment, except the payment of the costs, unnecessary. For this purpose I defer settling the order in this case until Monday of next week. In the mean time, if the defendant cause the possession of the books and papers to be restored to the place and custody in which they were at the time the injunction was served, he may show that fact on Monday by affidavit, and such order will then be made for the payment of the costs as shall be deemed proper.

The defendant Conover is adjudged to be in contempt, and the attachment will be granted as before stated.